R. A. HARRISON, plaintiff in error, *vs.* A. GUILL *et al.*, defendants in error.

1. Where an execution was levied upon a lot of cotton which was sold and the money arising from the sale was claimed under a distress warrant for rent of the land, on which the cotton was made, and the Court adjudged the warrant irregular but refused to pass any order disposing of the money until the landlord could procure a new distress warrant, which he did before the adjournment of the Court, and the money was awarded to him :

*Held*, That this was not error.

2. One who rents land and sub-lets it to a third person stands in the relation of landlord to the sub-tenant and may have a distress warrant for his rent.

Landlord and tenant.   Distress warrant.   Practice.   Before Judge ANDREWS.   Hancock Superior Court.   April Term, 1872.

The issues involved in this case arose on a money rule, and were submitted upon the following statement of facts :

" GEORGIA—HANCOCK COUNTY :

" Whereas, R. A. Harrison, of said county, did, at the October Term, 1871, of the Superior Court of said county, obtain a judgment against Mark Johnston for $148 20 principal, besides interest and costs, upon which execution was issued and levied upon seven hundred pounds of seed cotton, yielding four bales ginned and packed, on November 10th, 1871 ; the same was sold on the first Tuesday in December, 1871, for $306, which sum is now before the Court in the hands of the sheriff. And, whereas, Sidney C. Shivers did, on November 17th, 1871, sue out his distress warrant, which was levied the same day upon the same cotton by the sheriff, alleging that there was due him, as rent of the land on which said cotton was raised, four bales of lint cotton of the value of $297, besides interest and cost. And, whereas, Alexander Guill did, on November 27th, 1871, sue out and levy, by the sheriff, his distress warrant upon the same cotton, alleging to be due him as rent of the land upon which said cotton

was produced, four bales of cotton of the value of $297, besides interest and costs. And, whereas, T. C. and D. L. Turner did, on November 14th, 1871, place in the hands of the sheriff a *fi. fa.* in favor of said firm *versus* the said Mark Johnston, claiming that said *fi. fa.*, issued upon the foreclosure of a lien for provisions furnished said defendant, in the sum of $147 16, besides interest, costs and attorney's fees. And on the same day E. P. Clayton & Company placed in the hands of the sheriff of Hancock county their *fi. fa.*, claiming that the same issued upon the foreclosure of a lien against said Johnston, in their favor, for commercial fertilizers furnished, for the sum of $294, besides interest, costs and attorney's fees. And, whereas, it is agreed between all the parties above mentioned that the land upon which this cotton, so levied upon and sold, was raised, was the property of Alexander Guill, who, for the year 1871, rented the same to Sidney C. Shivers, as will appear by the written contract between said Guill and Shivers, now in Court, and that the said Shivers subsequently, and for the same year, and without the consent of the said Guill, sub-let the land aforesaid to Mark Johnston.

"Now, for the purpose of procuring a distribution of the fund arising from the sale of said cotton, according to the law, and which fund is in the sheriff's hands, all the parties to this agreement, while contending for the priority each of his own claim, and resisting the validity of every other claim, and especially the pleadings upon which said claims are based, have agreed upon the above statement of facts, and, waiving a jury, to submit all questions to the decision of the presiding Judge, consenting that he may hear evidence as to attorney's fees, provided he should hold that the execution which brought the money into Court should not be first paid.

(Signed)                              "C. W. DuBose,
"Attorney for Guill, Shivers, Clayton & Co., and Turner.
(Signed)                              "Frank A. Little,
                                      "John B. Jordan,
                              "Attorneys for R. A. Harrison."

Harrison moved to dismiss the distress warrant of Shivers upon the following grounds, to-wit:

1st. Because Shivers was not a landlord, and had no such interest in the land as would authorize him to distress a sub-tenant.

2d. Because the warrant was such a process as could not be enforced, having been made returnable to a Justice Court, being for an amount beyond its jurisdiction, to-wit: $297.

The Court sustained the motion and dismissed the warrant, but ordered the money held in Court until the landlord could perfect his pleadings.

A second distress warrant was substituted in favor of Shivers, which was also dismissed, on motion. A third distress warrant, in favor of the same plaintiff, was presented, held valid, and the fund in Court ordered paid to it. To which rulings counsel for Harrison excepted, and now assign the same as error.

Y. S. JORDAN; F. L. LITTLE, by brief, for plaintiff in error. 1. *Fi. fa.* can attack distress warrant: 7 Ga. R., 52. 2. The relation of landlord and tenant must exist to support distress warrant: Code, sec. 2253; Tay. on Lan. and Ten., sec. 561. Tenant cannot sub-let: Code, sec. 2253; 41 Ga. R., 594; Smith *vs.* Turnley, adm'r, pamph., Dec., p. 85, July T., 1871. 3. Distress warrants of Shivers should be dismissed: Code, sec. 4010, *et seq.;* 7 Ga. R., 52. Are not amendable: 26 Ga. R., 577; 6 Ga. R., 159; Code, sec. 3453. 4. The Court misconstrued the decision in 41 Georgia Reports, 95; 43 Ga. R., 339. 5. Harrison's *fi. fa.* entitled to costs and counsel fees: 14 Ga. R., 89; *Ibid.,* 320.

C. W. DuBose, by brief, for defendant. Sections 2260 and 2263 of the Code construed in 39 Georgia Reports, 17; 41 Ga. R., 98.

McCAY, Judge.

We have not gone into the numerous questions made on these several distress warrants. If the final judgment of the

Court was right, all these are immaterial. We see no error in the action of the Court in refusing to dispose of this money until the landlord could get his distress warrant into shape. The cotton was made on the land, and the lien of the landlord for his rent was the highest claim upon it: Code, section 2260. As to the actual cultivation of the soil, Guill was the landlord—(see the case of *Burnett & Company vs. Rich,* January Term, 1872,)—and was entitled to the money this cotton sold for. It would be a very lame tribunal, if a Court was compelled to direct money, going properly to one person, to be paid to another, when it was possible, by an hour or two delay, to adjudge it to its right owner. In the distribution of money raised by its own process, even common law Courts sit as Courts of equity, and especially is that true in this State.

Judgment affirmed.